**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

THERESA MYLES-CAMPBELL,        )   NO. EDCV 05-00904-MAN
                               )
          Plaintiff,        )
                               )   MEMORANDUM OPINION AND ORDER
        v.              )
                               )
MICHAEL J. ASTRUE,          )
Commissioner of the        )
Social Security Administration,  )
                               )
          Defendant.       )
_____)

Plaintiff filed a Complaint on October 6, 2005, seeking review of the denial by the Social Security Commissioner ("Commissioner")[1] of Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security insurance ("SSI"). On October 24, 2005, the parties filed a "Consent to Proceed Before a United States Magistrate Judge," pursuant to 28 U.S.C. § 636. The parties filed a Joint Stipulation on June 29, 2006, in which: Plaintiff seeks an order

---

[1]     Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted in place of Commissioner Joanne B. Barnhart as the Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

reversing the Commissioner's decision denying benefits and remanding the case to the Commissioner for a new hearing; and Defendant requests that the Commissioner's decision be affirmed.    The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB and SSI on February 21, 2001. (Administrative Record ("A.R.") 44-46, 178-80.)  Plaintiff claims to have been disabled since October 15, 2001, due to depression.  (A.R. 10, 44, 178.)   She has past relevant work experience as a delivery person.  (A.R. 10.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration.   On September 26, 2002, Plaintiff, who was represented by counsel, testified at a hearing before Administrative Law Judge Keith Varni ("ALJ").   (A.R. 190-203.)   In a December 5, 2002 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision.  (A.R. 4-6, 9-13.)

Plaintiff sought review of that decision in this Court and, pursuant to the parties' stipulation, the case was remanded to the ALJ on October 24, 2003.  (A.R. 230-32.)   Specifically, the parties set forth in their stipulation:

The Appeals Council has agreed to accept a voluntary remand of this claim for evaluation of [the] opinion evidence

2

of Dr. Alan Compton and Davis Powell, M.F.T. (at Tr. 102-103, 162), and, as needed, for further reassessment of Plaintiff's residual functional capacity and supplemental vocational testimony.

In addition, the Appeals Council notes that Plaintiff filed subsequent claims for disability and supplemental security income on January 18, 2001. The Appeals Council's present action with respect to the prior claims renders the subsequent claims duplicate or causes it to involve an overlapping period of time. The administrative law judge will associate the claim files and issue a new decision on the consolidated claims.

(A.R. 230-31.)

On June 15, 2005, the ALJ held a supplemental administrative hearing.[2] (A.R. 316-24.) In a July 14, 2005 decision, the ALJ found that Plaintiff was not disabled.[3] (A.R. 215-19.)

_____

[2] On April 16, 2005, the ALJ continued the hearing for Plaintiff's counsel to contact Plaintiff regarding the hearing. (A.R. 312-15.) At the June 15, 2005 hearing, Plaintiff was not present and was deemed an unnecessary witness. (A.R. 318-19.)

[3] Although the record does not contain evidence of a decision by the Appeals Council denying review in 2005, the parties do not raise this as an issue. This Court assumes that a final decision of the Commissioner was made and undertakes judicial review of the matter through the Commissioner's waiver or otherwise. 42 U.S.C. § 405(g)-(h). See also, e.g., Bowen v. City of New York, 477 U.S. 467, 482-85, 106 S. Ct. 2022, 2031-32 (1986)(Secretary has the discretion to waive the exhaustion requirement, but courts can waive the exhaustion requirement in cases where "a claimant's interest in having a particular issue resolved promptly is so great that deference to the agency's judgment is

## SUMMARY OF ADMINISTRATIVE DECISION

In his July 14, 2005 decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 15, 2000, her alleged onset of disability. (A.R. 218.)  He found that Plaintiff is a "younger individual," pursuant to 20 C.F.R. §§ 404.1563 and 416.963, and has at least a high school education, pursuant to 20 C.F.R. §§ 404.1564 and 416.964.  (*Id*.)  In addition, he found that Plaintiff's depression is "severe," albeit "very questionably" so, but she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.  (*Id*.)  He further found that Plaintiff had not presented subjective complaints that "are credibly indicative of an inability to perform substantial gainful activity for the reasons set forth in my prior decision."  (*Id*.)

The ALJ found that Plaintiff has the residual functional capacity "for work at any exertional level without the imposition of any physical nonexertional limitations, and the mental residual functional capacity for simple, routine, repetitive, non-public tasks." (*Id*.)  In addition, he found that Plaintiff cannot perform her past relevant work.  However, based on the testimony of a vocational expert and relying upon Rule 204.00 of the Medical-Vocational guidelines, he found that she could perform other work in the national economy, such as the jobs of an

inappropriate"; citations omitted); <u>Cassim v. Bowen</u>, 824 F.2d 791, 795 (9th Cir. 1987)(exhaustion requirement can be waived by the Secretary or by the courts).

office helper, cook's helper, or packager.[4]  (A.R. 217-18.)  Thus, the

ALJ concluded that Plaintiff is not disabled.  (A.R. 218.)


### STANDARD OF REVIEW


This Court reviews the Commissioner's decision to determine
whether it is free from legal error and supported by substantial
evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The
Commissioner's decision must stand if it is supported by substantial
evidence and applies the appropriate legal standards.  Saelee v. Chater,
94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a
mere scintilla but less than a preponderance -- it is such relevant
evidence that a reasonable mind might accept as adequate to support the
conclusion."  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

---

[4]      Rule 204.00 provides:

*Maximum sustained work capability limited to heavy work (or
very heavy work) as a result of severe medically determinable
impairment(s).*  The residual functional capacity to perform
heavy work or very heavy work includes the functional
capability for work at the lesser functional levels as well,
and represents substantial work capability for jobs in the
national economy at all skill and physical demand levels.
Individuals who retain the functional capacity to perform
heavy work (or very heavy work) ordinarily will not have a
severe impairment or will be able to do their past work -- of
which would have already provided a basis for a decision of
"not disabled."  Environmental restrictions ordinarily would
not significantly affect the range of work existing in the
national economy for individuals with the physical capability
for heavy work (or very heavy work). Thus an impairment which
does not preclude heavy work (or very heavy work) would not
ordinarily be the primary reason for unemployment, and
generally is sufficient for a finding of not disabled, even
though age, education, and skill level of prior work
experience may be considered adverse.

20 C.F.R. Pt. 220, App. 2.

5

1      Although this Court cannot substitute its discretion for that of
2 the Commissioner, this Court nonetheless must review the record as a
3 whole, "weighing both the evidence that supports and the evidence that
4 detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Secretary</u>
5 <u>of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also*
6 <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is
7 responsible for determining credibility, resolving conflicts in medical
8 testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d
9 1035, 1039-40 (9th Cir. 1995).  This Court must uphold the
10 Commissioner's decision if it is supported by substantial evidence and
11 free from legal error, even when the record reasonably supports more
12 than one rational interpretation of the evidence.  *Id.* at 1041; *see also*
13 <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d
14 595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th
15 Cir. 1995).

16

17                              **DISCUSSION**

18

19      Plaintiff alleges three disputed issues. <u>First</u>, Plaintiff contends
20 that the ALJ failed to discuss and consider the impact of the side
21 effects of her medications on her ability to work. <u>Second</u>, she contends
22 that the ALJ failed to consider the state agency physician's findings
23 adequately.  <u>Third</u>, she contends that the ALJ incorrectly found that
24 there is other work in the national economy that she can perform.
25 (Joint Stip. at 2-3.)
26 ///
27 ///
28 ///

**A.** **The ALJ Failed To Evaluate Properly The Evidence Regarding Plaintiff's Mental Impairments, And The Record Must Be Further Developed Regarding Her Mental Limitations**.

In discussing the basis of his finding regarding Plaintiff's mental residual functional capacity, the ALJ explained:

> In re-considering this case, I note there is no new evidence on which to comment, no indication that [Plaintiff] is under current treatment, and no established reason to depart from my previous evaluation of the evidence and [Plaintiff's] testimony.  Therefore, I hereby incorporate my prior decision by reference (Exhibit 3-A), which thus stands as the decision on remand, as supplemented herein.

> Dr. Rath testified that [Plaintiff's] condition falls under Section 12.04, but that it never met or equaled the "B" criteria, with no limitations ever greater than "moderate." He further noted that [Plaintiff's] treatment has been sporadic, with her compliance clearly questionable, with many "no shows" for appointments and indications of not taking her medications.  He did note that [Plaintiff] got better when she followed treatment, but that there are no records after 2002, making it difficult to comment on her current status.  He further concluded that, based on the medical evidence or record, [Plaintiff] could perform a job involving simple, routine, repetitive, non-public tasks.

In remanding this case, the District Court specifically ordered that further consideration be given to the opinion evidence from [Plaintiff's] treating psychiatrist, Dr. Alan Compton, and therapist, Davis Powell, MFT.   Dr. Compton diagnosed schizoaffective disorder, depressed type, and assessed [Plaintiff's] GAF at 45 (see Exhibit 1-f, p. 7; Exhibit 5-F, p. 29; Exhibit 6-p, p. 46), suggesting a significant impairment of functioning, but his treating notes show consistent improvement and satisfactory functioning as long as she follows her treatment plan (see Exhibit 1-F, p. 3; Exhibit 6-F, pp. 2,6, 9, 13, 18, 22, 33, 43).

In April 2002, Davis Powell completed a Work Capacity Evaluation in which he checked boxes indicating that [Plaintiff] was moderately or markedly limited in most areas of functioning (see Exhibit 10-E).   These limitations, however, are not borne out by his treating records, which show minor auditory hallucinations and intermittent situational stress, but no indication of any ongoing functional difficulties which could be characterized as more than moderate (see Exhibits 1F, 5-F, 6-F).

Accordingly, I do not find that the opinion or treating notes of Dr. Compton or Mr. Powell warrant the assessment of more restrictive limitations and I thus hereby reiterate my determination that [Plaintiff] does not have any impairment-related physical limitations and is mentally capable of performing [work] involving simple, routine, repetitive, non-

8

1    public tasks.

2

3  (A.R. 217.)

4

5       At the June 15, 2005 administrative hearing, the ALJ asked Dr. Rath

6  to describe Plaintiff's mental residual functional capacity and to opine

7  as to whether her condition met or equaled any of the listings, and Dr.

8  Rath responded as follows:

9

10       [Plaintiff's]   symptoms   would   fall   under   a   12.04,   Other

11       Psychotic Disorder Not Otherwise Specified.  There would be no

12       other "A" criteria.  *And during the period of time covered by*

13       *the records, restrictions of activities of daily living would*

14       *be moderate, difficulties in maintaining social functioning*

15       *would be moderate.  Difficulties in concentration, persistence*

16       *or pace would be moderate.*  Episodes of decompensation in work

17       or work-like settings would be none.  There's no evidence of

18       the "C" criteria.  [Plaintiff] has sought out treatment on a

19       sporadic basis except for 2002.  1F [extends] from 2/13/01 to

20       5/8/01.  It diagnoses with a Major Depression With Psychotic

21       Features.  Talks about her alleged hallucinations.  Then at

22       5F, that's the [Victor valley Counseling notes].  She ran out

23       of medication in 5F-20 and in January of '02 she had not been

24       taking  her  medication  for  some  months  and  allegedly  her

25       symptoms became worse.  So [there are] a number of no-shows in

26       the record. . . .  There is some issue concerning a failure to

27       follow prescribed treatment.  She was reporting sleep problems

28       in 5F-24, however, in 6F-2 she was treated and was sleeping

9

better and feeling better as of 9/9/02. Her sleep had
improved in 6F-6 as of 6/17/02. She was sleeping through the
night in May of '02 and in 6F-9 and so on. So-and there's no
records in 2003 and 2004 so it is unknown – there's no
documentation at all of problems during that period of time.
She improved during 2002 and was only seen for a limited
period of time in 2001. [She] [h]asn't been overly
cooperative with taking medication or showing up for
appointments. So she does not meet or equal any listings,
according to the record. That's all, Your Honor.

(A.R. 319-20; emphasis added.)

The ALJ then asked Dr. Rath whether, "[i]f [Plaintiff] had a job
that involved only simple, routine, repetitive and non-public tasks,
could she do that job or not?" Dr. Rath responded, "[y]es." (A.R. 320-
21.)

Here, although Dr. Rath generally described Plaintiff's functional
limitations (*viz.*, "moderate" restrictions in activities of daily
living, maintaining social functioning, and maintaining concentration,
persistence, or pace), he did not provide a mental residual functional
capacity assessment setting forth the precise limitations Plaintiff
would have in the workplace. While Dr. Rath agreed that Plaintiff has
the ability to perform "simple, routine, repetitive and non-public
tasks," his affirmative response does not appear to be consistent with
his description of Plaintiff's "moderate" mental limitations. Indeed,
Dr. Rath's opinion pertaining to Plaintiff's "moderate" mental

limitations suggests a more limited residual functional capacity than the ALJ found.

Aside from the opinion Dr. Rath provided, the record contains evidence submitted by Plaintiff's treating mental health care professionals, which the ALJ rejected. (A.R. 217.) In addition, it contains the March 15, 2001 Mental Residual Functional Capacity Assessment completed by Dr. Michael Skopec, a state agency physician, assessing Plaintiff with "moderate" limitations in understanding and memory, sustained concentration and persistence, and social interaction, as Dr. Rath also noted. (A.R. 129-30.) As Plaintiff correctly contends, the ALJ failed to discuss this assessment, which, like Dr. Rath's opinion, indicates a more limited mental residual functional capacity than the one found by the ALJ.

Defendant contends that there is no error, as the ALJ "implicitly addressed" Dr. Skopec's opinion in determining Plaintiff's mental residual functional capacity, based on Dr. Skopec's comment at the end of his assessment that: "[Plaintiff's] condition is severe at this time. However, she has started treatment and medication and it is expected that her condition will improve within 12 months to the point where she will be capable of performing at least simple, repetitive, unskilled work that does not involve working with the public." (Joint Stip. at 9, citing A.R. 131.) However, it is not clear that Dr. Skopec's prognosis regarding Plaintiff's mental limitations is supported by substantial evidence, as it does not appear to be borne out by the

1  record.[5]   Moreover,  in  view  of  the  paucity  of  evidence  directly
2  addressing  Plaintiff's  claimed  mental  impairment  and  the  possibility
3  that  Dr. Rath  relied  upon  Dr. Skopec's  optimistic  prognosis  in  forming
4  his  opinion,  the  ALJ  should  address  this  opinion  on  remand.

5

6      Most  problematically,  as  the  ALJ's  assessment  is  not  clearly  based
7  upon  the  description  of  Plaintiff's  limitations  provided  by  Dr. Rath  or
8  Plaintiff's  treating  doctors,  it  is  unclear  that  the  ALJ's  assessment  of
9  Plaintiff's  mental  impairment  and  attendant  residual  functional  capacity
10 assessment  is  based  on  substantial  evidence,  rather  than  on  an  improper
11 rendering  of  his  own  medical  opinion  or  judgment.  *See* Tackett v. Apfel,
12 180  F.3d  1094,  1102  (9th  Cir.  1999);  Day v. Weinberger,  522  F.2d  1154,
13 1156  (9th  Cir.  1975).   Thus,  because  the  record  does  not  show  that  the
14 ALJ's  mental  residual  functional  capacity  finding  -- that  Plaintiff  is
15 restricted  to  "limited  contact  with  the  public  and  co-workers"  and
16 "simple  work  in  a  low  stress  environment" -- is  based  on  the  unequivocal
17 opinion  of  a  qualified  medical  professional,  the  mental  residual
18 functional  capacity  finding  constitutes  reversible  error.  *See* 20 C.F.R.
19 §§ 404.1513,  416.913 ("We  need  evidence  from  acceptable  medical  sources
20 to  establish  whether  you  have  a  medically  determinable  impairment(s)"
21 and  listing  acceptable  medical  sources);  20 C.F.R.  §§ 404.1527(e)(2),
22 416.927(e)(2)("We  use  medical  sources,  including  your  treating  source,

23

24      [5]     (*See, e.g.*, A.R. 142 -- Dr. Compton's April 3, 2002 progress
25 note, indicating that Plaintiff remains "significantly symptomatic" and
   continues  to  have  auditory  and  visual  hallucinations;  150  --  Dr.
26 Compton's  February  7,  2002  progress  note,  indicating  "[m]odest
   improvement" because Plaintiff hadn't heard her deceased husband's voice
27 in two weeks but continued to be easily frustrated and to yell at her
   children; 286 -- Dr. Compton's March 12, 2002 progress note, indicating
28 that Plaintiff continued to have "relatively benign" visual and auditory
   hallucinations every day.)

to provide evidence, including opinions, on the nature and severity of your impairment(s).").

As there is not a sufficient basis for the ALJ's mental residual functional capacity finding, the record should be developed and clarified, and the ALJ then must redetermine Plaintiff's mental residual functional capacity. *See* <u>Brown v. Heckler</u>, 713 F.2d 441, 442-43 (9th Cir. 1993); 20 C.F.R. §§ 404.1512(e), 416.912(e)(duty to re-contact treating physician); *see also* 20 C.F.R. §§ 404.1512a(b), 416.919a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity, or insufficiency in the evidence). *See also* <u>Thomas v. Barnhart</u>, 278 F.3d 947, 956-57, 959 (9th Cir. 2002) (requirement in 20 C.F.R. § 404.1512(e), that the Commissioner re-contact treating sources, is triggered where the information from the treating sources is inadequate to make a determination regarding disability).

Accordingly, the ALJ's finding regarding Plaintiff's mental residual functional capacity constitutes reversible error.

**B.    <u>The ALJ's Credibility Determination Is Affirmed</u>.**

The Court will give great weight to the ALJ's credibility assessment. <u>Anderson v. Sullivan</u>, 914 F.2d 1121, 1124 (9th Cir. 1990); <u>Brawner v. Secretary</u>, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically). In rendering a credibility evaluation, the ALJ may consider: "(1) ordinary techniques of credibility evaluation, such

13

as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen, 80 F.3d at 1284. When an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." Cequerra v. Secretary, 933 F.2d 735, 738 (9th Cir. 1991); Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony").

With respect to the evaluation of subjective symptoms, including pain, the Social Security Regulations provide, *inter alia*, as follows:

> Since symptoms suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. The information that you, your treating or examining physician or psychologist, or other persons provide about your pain or other symptoms . . . is also an important indicator of the intensity and persistence of your symptoms. . . . Factors relevant to your symptoms, such as pain, which we will consider include: . . . (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; . . . [and]  (vi) Any measures you use or have used to relieve your

14

pain or other symptoms (e.g., lying flat on your back,
standing for 15 to 20 minutes every hour, sleeping on a board,
etc.).

20 C.F.R. § 404.1529(c)(3).

In evaluating the credibility of Plaintiff's claimed symptoms and
limitations in the ALJ's December 5, 2002 decision, which the ALJ
incorporated into his July 14, 2005 decision (A.R. 217), the ALJ
explained:

While [Plaintiff] asserts an onset date of October 15,
2000, the record documents depression treated at San
Bernardino County Department of Behavioral Health since only
January 2001. At the initial time of intake, there was no
indication of prior treatment. When seen on February 13,
2001, cognitive function appeared in the normal range,
immediate and recent recall was intact and insight and
judgment appeared average. [Plaintiff] related that she
attempted to work one year ago as a delivery person. She was
prescribed Prozac and by April 2001, Dr. Compton noted that
her psychotic symptoms had somewhat diminished (Exhibit 1F,
page 3). In addition, her asserted visual and auditory
hallucinations had diminished, and [Plaintiff] was noted to be
expressing her thoughts more fluently.

When [Plaintiff] was seen on December 18, 2001, affect
was noted to be brighter. She was found to be increasingly

symptomatic in January 2002 but only because she had run out of medication several months prior (Exhibit 5F, page 20).

[Plaintiff's] subjective complaints credibly establish no less of a residual functional capacity. [Plaintiff] asserted depression, crying, auditory hallucinations, visual hallucinations, suicidal ideation, naps, poor persistence, headaches and the need to lie down during the day. She drives and in fact drove herself some 40 minutes to the hearing. She possesses a valid California driver's license renewed on May 9, 2001, without restriction. She lives in a house with two children ages 18 and 16 both of whom are in school. She cooks, housekeeps, launders, shops, and otherwise would not detail her activities of daily living. She receives AFDC in a check made out to her and also receives food stamps and handles the family finances. I see no credible evidence of any of the B criteria greater than slight, moderate, none and never.

(A.R. 11.)

Plaintiff contends that the ALJ improperly failed to consider limitations and symptoms she has due to the side effects of her medication. Specifically, Plaintiff contends that the ALJ disregarded her testimony at the September 26, 2002 hearing, that her medication "makes her drowsy a lot" and precludes her from driving. (Joint Stip. at 3, citing A.R. 194.) In addition, she cites her February 20, 2001 Disability Report, in which she stated: "I am on currently medications

16

that [cause] dizziness, drowsiness, [and blurred] vision." (Joint Stip. at 3, citing A.R. 49.)  Plaintiff further contends that, because the ALJ erred in failing to discuss these side effects, the ALJ violated Social Security Ruling 96-7p, and remand is necessary to evaluate the effects of Plaintiff's medications on her residual functional capacity. (Joint Stip. at 4.)

Here, the record does not support any limitations on Plaintiff's residual functional capacity arising from side effects of her medications; indeed, the record amply demonstrates that her medications were "well-tolerated."[6]  The only mention in the record of any side effect of drowsiness was an isolated reference.[7]  Indeed, the record indicates that she took Zyprexa at night to help her sleep, and her drowsiness primarily arose from her poor sleeping habits, not from the

_____

[6]   (A.R. 142 -- April 3, 2002 progress note, indicating "Geodon appears well tolerated.  No [extrapyramidal symptoms] (involuntary movements, tremors and rigidity, body restlessness, muscle contractions and changes in breathing and heart rate) or [tardive dyskinesia] (involuntary movements of the face, extremities, or trunk)" and "[g]enerally sleeping at night"; 148, 286 -- March 12, 2002 progress note, indicating "No EPS or TD.  No sedation"; 150, 287 -- February 7, 2002 progress note, indicating "Occasional visual blurring (doubt secondary to Geodon).  No EPS or TD"; 165 -- July 31, 2001 progress note, indicating no side effects and noting "[Weight] gain.  No EPS or TD."; 171 -- June 12, 2001 progress note, indicating no side effects and noting "[weight] to be monitored"; 266 -- November 4, 2002 progress note, indicating "No EPS or TD.  Meds well-tolerated."; 267 -- September 9, 2002 progress note, indicating "Meds well tolerated.  No EPS or TD"; 268 -- August 9, 2002 progress note, indicating "Present meds well tolerated."; 271 -- June 17, 2002 progress note, indicating "No headache.  No GI changes.  No EPS or TD."; 274 -- May 20, 2002 progress note, indicating "No EPS or TD." and "Zoloft well tolerated"; 278 -- May 1, 2002 progress report, indicating "Geodon well tolerated.  No apparent S/E.  No EPS or TD."; 298 -- July 31, 2001 progress note, indicating "No EPS or TD.")

[7]   (A.R. 176, 308 --- May 8, 2001 progress note, indicating morning sedation.)

17

side effects of her medication.[8]  To the extent these records show that Plaintiff gained weight due to side effects of Zyprexa,[9] Plaintiff does not explain, nor does the record show, how this side effect limited her ability to work in any way.  *See* <u>Burch v. Barnhart</u>, 400 F.3d 676, 681-82 (9th Cir. 2005)(ALJ did not err by failing to discuss the effects of the claimant's impairment of obesity and its combined effect on her other impairments, as there was no showing that the claimant's obesity caused any functional limitations or exacerbated any other impairments).

Furthermore, Plaintiff's claim that the ALJ committed reversible error by failing to address these side effects is unpersuasive.  As quoted above, the ALJ specifically addressed the side effects Plaintiff claimed at the September 26, 2002 hearing, *i.e.*, her drowsiness.  Even though the ALJ did not address the other claimed side effects noted in her Disability Report, which, like her drowsiness, are not supported by the record, his failure to do so did not constitute reversible error.  In fact, in a case upon which Plaintiff relies, <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002), the Ninth Circuit affirmed the ALJ's credibility rejection under similar facts.  There, an ALJ did not

---

[8]   (A.R. 150 -- February 7, 2002 progress notes, stating that "Sleep is okay, although frequent interruptions at night possibly related to daytime napping."; 165 -- July 31, 2001 progress note, stating "Sleep schedule [continues to be] somewhat irregular [with] daytime nap and light night to bed"); 171 -- June 12, 2001 progress note, indicating "Sleep hygiene again discussed, particularly not watching TV or trying to read in bed.  Also the important of rising at a desired hour in the morning and not returning to bed during the daytime, thus promoting earlier sleep at night."; 278 -- May 1, 2002 progress note, indicating "Still has some trouble sleeping at night but this may be related to morning napping.")

[9]   (A.R. 298 -- July 31, 2001 progress note, indicating "[Weight] gain."; 304 -- June 12, 2001 progress report, indicating "[Weight] to be monitored."; 308 -- May 8, 2001 progress note, indicating "[Weight] to be monitored.")

specifically address a claimant's claimed side effects of medication in his decision, but sufficiently rejected her testimony regarding her symptoms and limitations as not credible on other, various grounds, and the record failed to support the existence of the claimed side effects.

Accordingly, Plaintiff's argument pertaining to her claimed side effects is rejected.

**C.   Further Testimony From A Vocational Expert May Be Required.**

As noted above, the record regarding Plaintiff's mental residual functional capacity must be developed, and therefore, the finding regarding Plaintiff's mental limitations may change. Consequently, it is likely that further testimony from a vocational expert may be required in order to determine what jobs in the national economy Plaintiff can perform with her limitations. Thus, the Court does not reach Plaintiff's arguments regarding the propriety of the ALJ's hypothetical question to the vocational expert in the proceedings below.

In considering whether vocational expert testimony is necessary, an ALJ must seek the testimony of a vocational expert if the claimant has non-exertional limitations, such as mental limitations. *See* Reddick, 157 F.3d at 729 (because the claimant had non-exertional limitations, it was error not to seek the testimony of a vocational expert). Unless the vocational expert's testimony is based on a claimant's complete set of limitations, it has no evidentiary value. *See* Embrey v. Bowen, 849 F.2d 418, 422-24 (9th Cir. 1987)(in posing a hypothetical to a vocational expert, the ALJ must fully and accurately

19

reflect all of the claimant's limitations).

**D.   <u>Remand Is Necessary</u>.**

In view of the ALJ's failure to develop the record adequately regarding Plaintiff's mental limitations and the probable need for further vocational expert testimony, this action must be remanded.  *See* <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

CONCLUSION

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.  Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

///
///
///
///
///
///
///
///
///
///

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED:  March 27, 2007

/S/
_____     _____
                                         MARGARET A. NAGLE
                                         UNITED STATES MAGISTRATE JUDGE